UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :

       v.                   :         No. 21-CR-747 (JEB)

**EMILY HERNANDEZ**      :

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Ms. Hernandez comes before this Court for sentencing having pleaded guilty to one count of entering and remaining in a restricted building. She was arrested just two weeks after the events, cooperated fully with law enforcement immediately upon her arrest and continuing until her sentencing, expressed a desire to plead guilty shortly after her arrest, and remains prepared to accept the consequences of her actions. She requests that the Court adopt the recommendation of the Probation Office and impose a probationary sentence. She has no objection to the imposition of a term of home incarceration as a condition of supervision, recognizing it as an appropriate punishment.

**Background and Characteristics of Ms. Hernandez**

Ms. Hernandez is a 22- year- old woman who lives with her parents in Missouri and works on a local farm.[1] She is a kind, quiet young woman who participated in sports and the 4H

---

[1] The PSR indicates that Ms. Hernandez is unemployed. That is because after her car accident, Ms. Hernandez stopped working for a period of time, but she has since resumed working at the farm.

in high school. She was a member of the high school science club and a member of the student council.  She was a volunteer with the Special Olympics. She was also active in the high school Interact Club – an organization that helps with community charities -- spending time at nursing homes, rotary clubs, and other community organizations.  After graduating from high school, she got an Associate's degree from East Central College. Despite the mistakes she has made this past year, she still hopes to further her education and get a job serving her community. Prior to this incident, Ms. Hernandez had no negative interactions with law enforcement and no criminal history.

    Perhaps most telling of her character is that days after her arrest, a woman in her community contacted Ms. Hernandez's local counsel, Mr. Corlija, and left a voicemail message offering to do anything she could to assist Ms. Hernandez.  In an emotional voicemail she talked of how kind Ms. Hernandez was to her son, a classmate with autism.  It is difficult to expect members of the general public to speak in support of defendants charged in the events that occurred on January 6, especially in light of the harsh light that comes with being involved in these cases. However, undersigned counsel recently spoke with S.B[2]., who had left the message for local counsel a year ago.  She promptly called back and, again, fighting back tears, she expressed how grateful she was for the genuine acts of kindness Emily showed her son over the years. She spoke of Emily dancing with her son at school dances when he had no friends, despite the snickering and remarks of the more popular girls. She said Emily's true character showed through – it was not just a one-time event, she was always kind and inclusive, and was there for

---

[2] Because of the intense scrutiny that has befallen many who speak out for those charged in the January 6 events,  and to protect the privacy of S.B.'s son, counsel has used only the initials in this public pleading.  However, S.B. has offered to speak directly to the Court should the Court so desire.

S.B.'s son when no one else was. Other friends and family have written letters of support for Ms. Hernandez and those letters are attached to this pleading as Exhibit A.

**Circumstances of the Offense**

In January 2021, Ms. Hernandez traveled to Washington D.C. on a whim. Her uncle was coming and invited her to ride along – she had no prior plans to come to D.C. Her uncle said he was going to see Trump speak and said she could come along with him and a friend of his whom she had not met. Ms. Hernandez has never been political, attended no rallies, did not post on social media about political issues of the day, and had no particular interest in the rally that was planned for January 5. She simply wanted to take the opportunity to get out of Missouri for a few days. She was off-work and her uncle offered her the chance to see the sites in D.C. She had no intent to participate in any political activity let alone any violence. But, on January 6 she accompanied her uncle and his friend towards the mall, and then to the Capitol building. While she takes complete responsibility for her actions, it is important to note that she was urged on by her uncle and his friend, both of whom were considerably older than her. She acted immaturely and under their influence. She could not regret that decision more.

While inside the Capitol, Ms. Hernandez observed someone breaking a sign. Once he smashed it, she saw a group of people picking up the pieces and, urged on by her uncle, she also picked up a piece. When prompted to by her uncle, she also held the sign up in pictures that have become iconic. A blogger was posting outside and turned to her at one point and she displayed the signs. However, she did not actively participate in an interview with anyone, nor did she make comments designed to incite others. While she acted immaturely and irresponsibly, often prompted by her uncle and his friend, she was not violent, did not encourage violence, and did not disparage police officers. And, she returned the property she took – both the do not touch

sign and the shard of the broken Pelosi sign, as well as other non-valuable items she picked up along the way, immediately when requested by law enforcement upon her arrest. Unlike others, she did not sell or attempt to sell the items. She cooperated fully, expressing remorse for what she had done. As embarrassed as she was, she did not minimize her misconduct.

### A Sentence of Probation would be Appropriate in this Case

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United States*, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). In this case, a term of probation with a period of home confinement and/or community service would meet all of the pertinent purposes of sentencing and would be appropriate given Ms. Hernandez's history and characteristics.

Notably, Ms. Hernandez did not engage in any violence or destruction of property. The government suggests that that lack of violence and destruction of property is not a mitigating factor in misdemeanor cases because, had this conduct been present, she would have been charged with felony offenses. However, this distinction is important because there have been misdemeanor cases where defendants did display assaultive and/or aggressive behavior. Without addressing all of the cases where sentences have been imposed, Counsel would point the Court to a few examples: *United States v.Bradley Rukstales*, 21-CR-041 (CJN) (defendant sentenced to 30 days' incarceration after government alleged he threw a chair in the direction of police officers who had been forced to retreat and was ultimately dragged out of building after resisting their efforts); *United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (two months' home detention imposed as defendant was young, did well on pre-trial supervision, and had no criminal history but shouted at police while entering building); *United States v. Jordan Hernandez*, 21-CR-272 (TJK) (court imposed two months' home detention despite Hernandez shouting at police and scaling wall to gain access to Capitol).

Importantly, Ms. Hernandez was arrested within weeks of January 6, and was fully cooperative with law enforcement. As noted, she returned the property she had taken and through counsel, provided a fulsome accounting of her actions that day and everything she observed. Unlike some who sought to profit from selling items taken during the riot, Ms. Hernandez did not. See e.g., *United States v. Jason Riddle*, 21-304 (DLF). She has since met with law enforcement to allow them to examine her phone and follow up on any questions they may have had. It is important to note that while more than a year has passed since Ms. Hernandez was arrested, she indicated her desire to resolve the case against her by accepting responsibility and pleading guilty at the earliest juncture. It took the parties more time than may have been

expected to work out the details of that plea, but the delay had nothing to do with Ms. Hernandez's desire to plead guilty.

Ultimately, Ms. Hernandez pleaded guilty to Entering and Remaining in a Restricted Building, a misdemeanor charge. Her guideline range for that offense is 0 to 6 months incarceration, and both the statute and guidelines authorize a period of probation. The United States Probation Office has recommended a sentence of one year of probation. Ms. Hernandez respectfully requests that the Court follow the recommendation of the USPO. Ms. Hernandez would not oppose special conditions of home confinement and/or community service as part of that probationary sentence.

Ms. Hernandez has been trying to deal with the enormity of her actions and the consequences since January 6. In the immediate aftermath, she deleted her social media accounts of the tremendous outpouring of negative reactions to the day. She has received hate mail and threats in the aftermath, which, especially for a 22-year-old woman are very difficult to process. (Examples of this hate mail that was sent via the USPS are being filed separately under seal as Exh. B so as not to perpetuate the hate they express.)

As noted in the PSR, Ms. Hernandez was involved in a traffic accident that resulted in a fatality. She has recently been charged in that case so neither Ms. Hernandez nor counsel are in a position to make any comments. To her credit, through counsel, she immediately notified the government and pretrial services of that incident, and agreed to modified conditions of release to address concerns that were raised. Ms. Hernandez is now receiving mental health treatment and counseling. After the events of January 6, Ms. Hernandez felt socially isolated. She was very remorseful and ashamed to be seen in public. She felt ostracized from members of the public and fear from the vitriolic hate mail she received. She deleted all social media accounts and refrained

from using any social media. Despite the emotional and mental toll this has taken on her, she has begun to learn to cope with stressful and worrisome situations much better. She has been engaged with Compass Behavioral Health and is receiving valuable and necessary mental health counseling.

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there is no need for incapacitation, specific deterrence or rehabilitation. Ms. Hernandez's likelihood of recidivism is very low. She has expressed genuine remorse and contrition, she turned herself in and cooperated fully with law enforcement, she immediately indicated a desire to plead guilty and did so as soon as the government made the plea offer. Her acceptance of responsibility was complete and without reservation. Thus, the purposes of sentencing that seem most at play are general deterrence and punishment.

General deterrence has also been served in these cases by the collateral consequences that have damaged the lives and reputations of misdemeanants with the same charge in full view of the world. The rise of social media has made available the intimate details of every January 6 defendants' case with the touch of a button. The world is watching and has observed even the least culpable defendants be arrested, charged, and sentenced in public. There is no doubt that general deterrence has been served for those who would be deterred. Moreover, the public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for the others involved. Those who would not be deterred by these consequences are likely not capable of being deterred. A period of probation does

constitute punishment as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms.

The government concedes that Ms. Hernandez committed no violent acts and destroyed no property. She did not destroy property, steal property, commit violent acts, or encourage others to do so. Ms. Hernandez engaged in no pre-planning or coordination activities. She came on a whim, invited by her uncle. She brought no weapons or even defensive gear with her. She did not post on social media bragging about her involvement or encouraging bad actions. When she met with law enforcement after the event, she made no excuses for her behavior, was sincerely contrite, did not blame law enforcement for her predicament, and did not rationalize her actions.

Another factor to consider is that Ms. Hernandez accepted full responsibility very early on. While it is not appropriate to punish an individual for asserting their right to go to trial and to have the government held to its burden of proof, there is a societal benefit when people who have done wrong acknowledge that wrongdoing in a public way as Ms. Hernandez has done. This has a deterrent effect on future wrongdoing and has a positive effect on others taking responsibility for their actions.

On the issue of sentencing disparity, counsel appreciates that the government has attempted to set out meaningful distinctions in cases and some coherent rationale for the recommendations it makes. However, those distinctions are not as clear as the government has suggested, and there is no scientific formula that will lead to sentencing uniformity. In a District with as many judges as this District has, there can be no definitive sentence that addresses the unique facts and circumstances of each case. Sentences imposed in these cases vary from very short terms of probation to periods of incarceration, and everything in between. While Ms.

Hernandez's conduct was serious, probation remains an appropriate resolution as it is well within the guidelines and would not result in disparity.  See e.g., *U.S. v. Jonathan Sanders*, 1-21-CR-384 (CJN) (36 months' probation); *United States v. Jackson Kostolsky*, 21-cr-197 (DLF) (36 months' probation with home confinement); *U.S. v. Jennifer Parks*, 1:21-CR-363 (CJN) (24 months' probation); *United States v. Julia Sizer*, 1-21-CR-621 (CRC) (12 months' probation); *United States v. Gary Edwards*, 1:21-CR-366 (JEB) (12 months' probation); *U.S. v. Jordan Hernandez*, 21-CR-272 (TJK), (24 months' probation); *United States v. Anna Morgan Lloyd*, 21-cr-164 (RCL) (probation imposed as requested by government); *United States v. Jessica and Joshua Bustle*, 21-Cr-238 (TFH) (probation with home confinement imposed with lesser terms of home confinement than requested by government); *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (probation with home confinement imposed); *United States v. Danielle Doyle,* Crim. No. 21-00234 (TNM) (2 months probation with fine imposed); *United States v. Valerie Ehrke*, 21-cr-97 (PLF) (probation imposed as requested by government);  *United States v. Eliel Rosa*, Crim. No. 21-068 (TNM) (12 months probation); *United States v. Jacob Hiles*, Crim. No. 21-155 (ABJ)(2 years probation); *United States v. Sean Cordon*, Crim. No. 21-269 (TNM) (2 months probation); *United States v. John Wilkerson, IV*, Crim. No. 21-302 (CRC)(3 years probation); *United States v. Andrew Wigley*, Crim. No. 21-042 (ABJ)(18 months probation); *United States v. Andrew Hatley*, Crim. No. 21-098 (TFH) (3 years probation); *United States v. Rachael Pert*, Crim. No. 21-139 (TNM)(2 years probation); *United States v. Jeffrey Witcher*, Crim. No. 21-235 (RC)(12 months probation); *United States v. Brandon Nelson and Abram Markofski*, Crim. No. 21-344 (JDB) (2 years probation); *United States v. Thomas Vinson and Lori Vinson*, 21-CR-55 (RBW) (Probation with community service and fine); *United States v. Eliel Rosa*, 21-68 (TNM) (12 months probation with community service); *United States v.*

*Thomas Gallagher*, 21-Cr-41 (24 months probation).  The government has of course pointed to other cases where periods of incarceration have been imposed. The defense submits that those cases do not justify a sentence of incarceration for Ms. Hernandez given her age, her contrition, her cooperation, and her history and characteristics.

In the end, this Court is faced with the task of meting out a just and appropriate sentence given all of the factors involved, and Ms. Hernandez places her trust in this Court to do just that.

        Respectfully submitted,

        A.  J. KRAMER
        FEDERAL PUBLIC DEFENDER

        _____/s/_____
        MICHELLE PETERSON
        Chief Assistant Federal Public Defender
        625 Indiana Avenue, N.W.
        Suite 550
        Washington, D.C. 20004

.